UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SUSAN BURNAROOS,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1]<br><br>    Defendant. | No. CV-12-03073-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for Summary Judgment. ECF No. 16, 23. Attorney D. James Tree represents Susan Burnaroos (Plaintiff); Special Assistant United States Attorney Summer Stinson represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 12. After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

On August 29, 2008, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, along with a Title XVI application for supplemental security income, both

---

[1] Carolyn W. Colvin, the current Acting Commissioner of Social Security, is hereby substituted as the Defendant herein. See FED. R. CIV. P. 25(d)(1).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

alleging disability beginning January 4, 2004. Tr. 10; 146-51. Plaintiff reported that she could not work due to ADHD, OCD, depression, bipolar disorder, anxiety disorder, and PTSD. Tr. 179. Plaintiff's claim was denied initially and on reconsideration, and she requested a hearing before an administrative law judge (ALJ). Tr. 83-128. A hearing was held on October 12, 2010, at which medical expert Ronald Klein, Ph.D., vocational expert Diane K. Kramer, and Plaintiff, who was represented by counsel, testified. Tr. 33-82. ALJ Marie Palachuk presided. Tr. 33. At the hearing, Plaintiff amended her onset date to January 25, 2006. Tr. 40. The ALJ denied benefits on November 5, 2010. Tr. 10-22. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 29 years old, and she had completed the eighth grade. Tr. 67. Plaintiff's past jobs included briefly working at a women's shelter and organizing donated clothing, taking care of dogs and cats at the Humane Society and working as a cleaner and a maintenance worker at a hotel her mother managed. Tr. 56-57; 68-69.

In her past, Plaintiff regularly used marijuana, cocaine, and methamphetamine. Tr. 298. Plaintiff's "drug of choice" was methamphetamine, and she "used it extensively." Tr. 298. Plaintiff testified that she has been sober since January 25, 2006. Tr. 54-55.

## ADMINISTRATIVE DECISION

At step one, ALJ Palachuk found that Plaintiff had not engaged

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

in substantial gainful activity since June 30, 2004. Tr. 12. At step two, she found Plaintiff had the severe impairments of "drug induced mood disorder vs. depressive disorder, borderline personality disorder with anti-social traits, and methamphetamine abuse, in remission since January 2006 per claimant report . . . ." Tr. 12-13. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Tr. 13. The ALJ also found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations, "the claimant is limited to simple, routine repetitive tasks involving no more than two-step commands. She should be away from the general public and have superficial contact with small groups of coworkers. She would need additional time to learn new tasks." Tr. 14. At step four, the ALJ found that Plaintiff could perform past relevant work as a fast food worker and housekeeper. Tr. 21.

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ISSUES**

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends that the ALJ erred by finding her testimony about the severity of her symptoms was not credible, by failing to address multiple treating and examining medical source opinions, and by rejecting ADHD as a severe impairment at step two. ECF No. 16 at 5-6.

**DISCUSSION**

**A.  Credibility**

Plaintiff contends that the ALJ erred by finding she lacked credibility. ECF No. 16 at 10-14. Specifically, Plaintiff complains that the ALJ erred by relying upon her statement that she had been receiving mental health treatment in Yakima for five years, when the records revealed she had been receiving treatment in Yakima for two years. Tr. 15; ECF No. 16 at 10-11.

     The ALJ gave several reasons for discounting Plaintiff's credibility. See Tr. 15-18. One of the reasons the ALJ provided was that Plaintiff claimed she had been treated at CWCMH in Yakima for five years, or since 2005, but the record revealed no records prior to July 2008. Tr. 15. As Plaintiff points out, the record reveals Plaintiff was assessed in May 2008, for a re-evaluation, and an update for any changes to Plaintiff's condition since her last assessment. Tr. 348; ECF No. 16 at 11. The record reveals Plaintiff's testimony regarding when she transferred her treatment from the Ellensburg office to the Yakima office was equivocal, and provided only after insistent questioning:

> Q. ... When did you stop going to Ellensburg Central Washington Comprehensive Mental Health?
>
> A. Well, I transferred over here to go to treatment. I moved over here to go to treatment.
>
> Q. So approximately when – year –
>
> A. When I started seeing Nina.
>
> Q. Year wise? Did you – stopped going to Ellensburg approximately when?
>
> A. It would go with the date of when I saw Nina, started seeing Nina.
>
> Q. I'm sorry. I know you're extremely – are you extremely nervous?
>
> A. Yeah.
>
> Q. Okay. You're having a hard time testifying. You're crying. I'm sorry.
>
> A. I'm sorry.
>
> . . .
>
> A. The year, I can't remember the year to pinpoint it. I'm sorry.
>
> Q. But could you –
>
> A. Five years I think.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

1
2    Q.   You think it's been about five years. Around five years ago you stopped going to the Ellensburg Central Washington Comprehensive Mental Health. Correct?

3    A.   Yes.

4  Tr. 52-53. In light of Plaintiff's equivocal answer and highly
5  charged emotional state, the ALJ's characterization of Plaintiff's
6  uncertainty as dishonesty was not reasonable. The ALJ's use of
7  Plaintiff's incorrect guess about the date she transferred her
8  treatment from Ellensburg to Yakima was not a valid reason to
9  discount Plaintiff's credibility.

10      The Plaintiff also complains that the ALJ erred by finding the
11  testimony of Plaintiff's mother, Karen Poe, established Plaintiff
12  could perform daily activities that contradicted her claims of total
13  disability. ECF No. 16 at 11-12. The ALJ stated she gave "full
14  consideration" to Plaintiff's mother's third-party function report.
15  Tr. 20; 202-09. The ALJ concluded that the report confirmed
16  Plaintiff is able to perform routine, simple activities of daily
17  living. Tr. 20. The ALJ's assessment of Ms. Poe's report is
18  supported by the record. For example, Ms. Poe reported that
19  Plaintiff cares for her own young child, prepares meals, performs
20  routine household chores, and grocery shops, but she has trouble
21  getting along with other people and with concentrating. Tr. 202-07.

22      Where the court concludes that one or more of the ALJ's reasons
23  supporting an adverse credibility finding are invalid, the court
24  examines whether the ALJ's reliance on such reasons was harmless
25  error. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162 (9th Cir.
26  2008); *Batson,* 359 F.3d at 1195-97 (applying harmless error standard
27  where one of the ALJ's several reasons supporting an adverse
28  credibility finding was held invalid). The Ninth Circuit explained,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

"So long as there remains 'substantial evidence supporting the ALJ's conclusions on credibility' and the error 'does not negate the validity of the ALJ's ultimate credibility conclusion,' such [error] is deemed harmless." *Carmickle,* 533 F.3d at 1162 (quoting *Batson,* 359 F.3d at 1197). Here, the finding regarding Plaintiff's inaccurate memory of when she transferred treatment from Ellensburg to Yakima was legally insufficient. However, substantial evidence remains, supported by clear and convincing reasons, for the adverse credibility determination and therefore the error was harmless.

**B. Medical Opinions**

Plaintiff argues that the ALJ erred by failing to address the opinions from Drs. Birdelbough, Nordyke, Martini and Toews, and by failing to include the limitations assessed by these doctors in the hypothetical and in Plaintiff's RFC. ECF No. 16 at 7-10. The ALJ is not required to discuss all evidence presented to him. *See Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citing *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981)). Rather, the ALJ need only explain why "significant probative evidence has been rejected." *Vincent,* 739 F.2d at 1394-95.

**1. Jay M. Toews, Ed.D. and Shahm Martini, M.D.**

Jay M. Towes, Ed.D., examined Plaintiff on March 2, 2002, well in advance of Plaintiff's onset date, and before Plaintiff stopped using methamphetamine in January 2006.[2] Tr. 40; 313-318. Similarly, Shahm Martini, M.D., examined Plaintiff on December 2, 2005, slightly before Plaintiff's onset date and while she was still using

---

[2]Plaintiff informed Dr. Toews that she was in substance abuse treatment at the time of the examination. Tr. 313.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

methamphetamine. Tr. 297-99. Medical opinions that predate the alleged onset of disability are of limited relevance. *Carmickle*, 533 F.3d at 1165. Moreover, neither record reveals a medical opinion that Plaintiff is incapable of work.[3] In light of the fact that both records were dated prior to Plaintiff's onset date and date she stopped using methamphetamine, the ALJ was not required to address these because the evidence was neither significant nor probative.

**2.  Billy R. Nordyke, D.O.**

Dr. Nordyke completed a Documentation Request for Medical/Disability Condition on January 23, 2008. Tr. 430-31. In that form, Dr. Nordyke indicated Plaintiff's condition would preclude her from working for two weeks. Tr. 431. Under the Social Security Act, in order to qualify as a disability, the impairment must be "expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The opinion of a physician that a Plaintiff's impairment will last just two weeks is not significant or probative to determining if Plaintiff is disabled under the Social Security guidelines.

---

[3]Dr. Toews noted that Plaintiff reported Wellbutrin helped her feel less depressed and improved her concentration and memory. Tr. 315. He opined Plaintiff demonstrated borderline range of intelligence, was capable of routine, repetitive activity and would have difficulty relating to co-workers and would work better in isolation. Tr. 317-18. Dr. Martini noted Plaintiff's affect was "euthymic-to-happy," appropriate, and her prognosis was mixed; good, dependent upon her current presentation of wanting to obtain her GED and move on with life, and guarded, based on her history. Tr. 299.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

Dr. Nordyke also examined Plaintiff on July 17, 2008. Tr. 342-43. Dr. Nordyke diagnosed Plaintiff with depressive disorder, prescribed medication including the antidepressant Celexa, and recommended she return in three months. Tr. 343. The record reveals Dr. Nordyke did not administer any tests, nor did he provide an opinion regarding Plaintiff's capabilities. In short, Dr. Nordyke's second treatment record provides no opinion related to the duration or severity of Plaintiff's impairments and, thus, it is neither significant nor probative. As a result, the ALJ was not required to address either of Dr. Nordyke's treatment records.

**3.   Sandy Birdlebough, Ph.D., ARNP**

Sandy Birdlebough, Ph.D., ARNP, first conducted a psychiatric examination of Plaintiff on August 27, 2008, because Plaintiff was seeking to restart treatment at Central Washington Comprehensive Mental Health. Tr. 345-46. Dr. Birdlebough diagnosed Plaintiff with ADHD, major depression, recurrent, polysubstance dependence in reported remission, rule-out bipolar, and personality disorder, not otherwise specified. Tr. 346. Dr. Birdlebaugh assigned Plaintiff a GAF score of 45. Tr. 346. Plaintiff began treatment, and a few weeks later, on September 10, 2008, Dr. Birdlebaugh examined Plaintiff, adjusted her medications and assigned her a GAF score of 48. Tr. 387. Dr. Birdlebaugh modified Plaintiff's diagnoses to major depressive disorder, recurrent, moderate, combined substance dependence, unspecified hyperkinetic syndrome, childhood, and unspecified personality disorder. Tr. 386.

Plaintiff argues that the ALJ erred by failing to address Dr. Birdlebough's psychiatric exam report and later treatment note, because both records indicate she "still had serious symptoms/

impairments, i.e., inability to work, opining a GAF score of 45." ECF No. 16 at 7. Plaintiff's argument that Dr. Birdlebaugh opined Plaintiff could not work is apparently based solely upon the GAF assessment, because neither medical record contains an explicit opinion that Plaintiff is unable to work. See Tr. 345-47; 386-87.

A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment. Diagnostic and Statistical Manual of Mental Disorders 20 (3rd. ed. rev. 1987). A GAF score between 41 and 50 denotes "serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." DSM-IV at 32. However, the ALJ has no obligation to credit or even consider GAF scores in the disability determination. *See* 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings."). "While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

Plaintiff's reliance upon the assigned GAF score as a definitive opinion about Plaintiff's level of disability within the social security context is misplaced. Dr. Birdlebaugh did not offer an explicit opinion that Plaintiff was incapable of work under the Social Security Administration guidelines. As such, the ALJ was not required to address Dr. Birdlebough's opinion.

Moreover, the circumstances of the examinations reveal Dr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

Birdlebough's opinion was not material to the ALJ's disability determination. The August 27, 2008, exam was essentially an intake exam that was based solely upon Plaintiff's subjective reports, and thus was not material or probative to the disability determination. Tr. 345-46. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may reject a physician's opinion if it is based to a large extent on plaintiff's self- reports that have been properly discounted as incredible); *see also Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Additionally, at the time of the exam, Plaintiff was not regularly taking medication that alleviated her symptoms and, thus, her condition on that date was not illustrative of Plaintiff's actual abilities. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled with medication are not disabling). As a result, the evaluations by Dr. Birdlebough do not amount to significant, probative evidence and, thus, the ALJ was not required to address this opinion. The ALJ did not err.

**4.   Nina Rapisarda, M.S.W.**

The Plaintiff contends that the ALJ erred by rejecting the opinions of Nina Rapisarda, Plaintiff's treating therapist. ECF No. 16 at 17-18. The ALJ gave little weight to Ms. Rapisarda's mental medical source statement for several reasons. Tr. 21. The ALJ noted that Ms. Rapisarda's assessment was contradicted by her treatment records, by Plaintiff's activities of daily living, by other medical assessments in the record, and the assessment was made

when Plaintiff was not taking medication that had previously controlled her symptoms. Tr. 21.

Plaintiff argues that Ms. Rapisarda is a treating source, and her assessment was consistent with the medical record as a whole. However, Plaintiff fails to cite to the record, or provide meaningful analysis to support her allegation. ECF No. 16 at 17-18; ECF No. 24 at 5. The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief. *See, Carmickle*, 533 F.3d at 1161 n.2 (9th Cir. 2008).

Notwithstanding Plaintiff's failure to adequately brief the issue, the ALJ's reasons for giving little weight to Ms. Rapisarda's opinion are specific and legitimate. See, *Morgan*, 169 F.3d at 603 (internal inconsistencies within a physician's report supports the decision to discount the opinion of a physician); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ permissibly rejected treating physician's opinion containing contradictory observations); *and see* 20 C.F.R. §§ 404.1527 (d)(2) and 416.927(d)(2) (weight given to a treating physician's opinion depends in part on whether it is consistent with other evidence in the record); and see *Warre*, 439 F.3d at 1006 (impairments that are effectively controlled with medication are not disabling). Moreover, the ALJ's specific and legitimate reasons for rejecting Ms. Rapisarda's mental medical source statement are supported by the record. *See* Tr. 382-91; 420-22; 434-61. As a result, the ALJ did not err by giving little weight to the opinion of Ms. Rapisarda.

**C.   Step Two**

Plaintiff contends that the ALJ erred by failing to find ADHD

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

among her severe impairments. ECF No. 16 at 14-16. At step two, the ALJ found Plaintiff had severe impairments of "drug induced mood disorder vs. depressive disorder, borderline personality disorder with anti social traits, and methamphetamine abuse, in remission since January 2006 per claimant report." Tr. 12-13. At step two of the sequential evaluation, the ALJ determines whether a claimant suffers from a "severe" impairment, *i.e.*, one that significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920(c). At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen*, 482 U.S. 137; 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).

To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Social Security regulations. *See, e.g., Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 602-03 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

In this case, the ALJ found that Plaintiff complained of ADHD, but she reported related symptoms only prior to her sobriety date. Tr. 19. The record supports the ALJ's determination that Plaintiff's reported ADHD symptoms existed during her period of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

methamphetamine and cocaine use. In March 2002, Jay M. Toews, Ed.D., examined Plaintiff and noted several times that she was evasive about substance abuse. Tr. 316-17. Dr. Toews diagnosed Plaintiff with methamphetamine and cocaine dependence and alcohol abuse in self-reported remission with rule-out substance abuse, and "Attention Deficit Hyperactivity Disorder, impulsive type, complicated by substance abuse." Tr. 318.

In April 2004, examining psychiatrist Paul Michels, M.D., opined, "I don't think there is clear evidence for a diagnosis of ADHD. Instead, she seems to describe a lack of interest in motivation consistent with her severe character disturbance." Tr. 312. Also, as the ALJ found, for a significant period Plaintiff chose to not medicate her ADHD. *See*, *e.g*, Tr. 541; 549; 557; *and see Warre*, 439 F.3d at 1006. In light of the medical evidence, Plaintiff failed to carry her burden to establish that after obtaining sobriety, she suffered from ADHD symptoms that significantly limited her ability to do basic work activities.

Moreover, an ALJ's error in failing to find a severe impairment at step two may be harmless, where ALJ considered the limitations resulting from the impairment later in the sequential disability evaluation process. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). In this case, Plaintiff's RFC accommodated ADHD-related difficulties Plaintiff might experience with sustained concentration by limiting her to "simple, routine repetitive tasks involving no more than two step commands." Tr. 14. As a result, even if the ALJ's failure to find ADHD as a severe impairment was error, such error was harmless. Accordingly, on this record, the ALJ did not err in failing to find

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

ADHD as a severe impairment at step two.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is supported by substantial evidence and is not based on legal error.  Accordingly,

**IT IS ORDERED:**

1.  Defendant's Motion for Summary Judgment, **ECF No. 23**, is **GRANTED.**

2.  Plaintiff's Motion for Summary Judgment, **ECF No. 16,** is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **DEFENDANT** and the file shall be **CLOSED.**

DATED September 30, 2013.


                    S/ JOHN T. RODGERS
              UNITED STATES MAGISTRATE JUDGE